ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2023-Feb-22 15:54:25
04CV-23-499
C19WD06 : 77 Pages

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**__________ DIVISION**

**ALICE EASTWOOD** **PLAINTIFF**

**V.** **NO. ____________________**

**LINCOLN LIFE ASSURANCE COMPANY OF BOSTON** **DEFENDANT**

---

**COMPLAINT**

---

**Introduction**

1. The plaintiff, Alice Eastwood, brings this action to recover benefits under a Group Disability Income Policy issued by the defendant, Lincoln Life Assurance Company of Boston ("Lincoln"), and obtain other relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.

2. In accordance with Ark. R. Civ. P. 10(d), a copy of Lincoln's policy is attached. Exhibit 1.

**Parties**

3. The plaintiff was at the time of the events described herein and is now a citizen of Benton County, Arkansas.

4. Lincoln is a domestic corporation, organized by the laws of Massachusetts with its home office in Boston, Massachusetts, which may be served with process at:

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company
300 Spring Building, Suite 900
300 Spring Street, Little Rock, AR 72201

## Jurisdiction

5. This court has jurisdiction under Ark. Code Ann. § 16-13-201(a) and the Arkansas Constitution, Amendment 80, § 6(A), each of which state that circuit courts shall have original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution. This is a justiciable matter not otherwise assigned pursuant to the Arkansas Constitution.

6. This court also has jurisdiction under ERISA, 29 U.S.C. § 1132(e)(1), which states that state courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of civil actions brought by participants or beneficiaries to recover benefits due to them under the terms of a plan, to enforce their rights under the terms of a plan, and to clarify their rights to future benefits under the terms of a plan.

## Venue

7. This court is the proper venue under Ark. Code Ann. § 23-79-204, which states that an action brought by an insured against an insurer as to a loss occurring under an insurance policy shall be brought in either the county in which the loss occurred or the county of the insured's residence at the time of the loss. The plaintiff was a resident of Benton County, Arkansas, at the time of the loss described herein.

## Facts

8. Lincoln issued a Group Disability Income Policy to Walmart Inc. Exhibit 1 (policy).

9. The policy provided short term disability ("STD") benefits and long term disability ("LTD") benefits to employees of Walmart Inc. Exhibit 1 at 3 (policy).

10. The plaintiff was a covered person under the policy.

11. The plaintiff was entitled to short term disability benefits for up to 26 weeks (*i.e.*, six months) so long as she was disabled under the terms of the policy. Exhibit 1 at 8 (policy); Claim File at 1598.[1]

12. The plaintiff was thereafter entitled to long term disability benefits for up to 24 months (*i.e.*, two years) so long as she was unable to perform her "own occupation" under the terms of the policy. Exhibit 1 at 9 (policy).

13. The plaintiff was thereafter still entitled to long term disability benefits up to age 67 so long as she was unable to perform "any occupation" under the terms of the policy. Exhibit 1 at 10 (policy); Claim File at 1610 ("LTD Max Date: 9/1/2045").

14. On 01/14/2019, the plaintiff was an attorney who was employed by Walmart Inc. as a Senior Director, Ethics, International Business Segment. Claim File at 1, 431, 1129 & 1571.

15. The plaintiff's occupation with Walmart Inc. was demanding and included, among many other things, "Travels internationally to and from multiple facilities or work-sites requiring extended overnight stays." Claim File at 433 (job description).

16. The plaintiff's occupation with Walmart Inc. provided high compensation. Claim File at 1574 (LTD Earnings History Detail).

17. On 01/14/2019, the plaintiff was injured in a car wreck.

18. The plaintiff was disabled by her injuries from the car wreck under the terms of Lincoln's policy.

---

[1] "Claim File" refers to the claim file produced by Lincoln on 07/08/2021 in portable document format ("pdf") with 1611 pages.

19. From 01/15/2019 to 07/15/2019, a period of six months, Lincoln paid STD benefits to the plaintiff, thereby exhausting those benefits under the terms of Lincoln's policy. Claim File at 1.

20. On 07/16/2019, Lincoln commenced paying LTD benefits to the plaintiff. Claim File at 1562 (letter approving claim for LTD benefits); Claim File at 1037 (letter affirming approval of claim for LTD benefits).

21. On 02/01/2021, while the plaintiff was still in the two-year "own occupation" period of coverage under Lincoln's policy, Lincoln terminated its payments of the plaintiff's LTD benefits. Claim File at 681 (letter terminating LTD benefits).

22. As of the date of Lincoln's decision to terminate its payments of the plaintiff's LTD benefits, the plaintiff's medical condition had not improved.

23. As of the date of Lincoln's decision to terminate its payments of the plaintiff's LTD benefits, the plaintiff remained disabled under the terms of Lincoln's policy.

24. On 03/08/2021, the plaintiff submitted a timely appeal to Lincoln of its decision to terminate her LTD benefits and submitted supporting letters from medical providers, medical records, and her job description. Claim File at 419 (appeal letter and supporting records).

25. On 05/21/2021, at the invitation of Lincoln, the plaintiff submitted an additional appeal letter and supporting medical records. Claim File at 342 (additional letter and supporting records).

26. On 06/15/2021, Lincoln wrote in a letter to the plaintiff "We have completed our review of your appeal for Long Term Disability Benefits and the original

determination to deny benefits beyond February 1, 2021 is being maintained." Claim File at 25.

27. The plaintiff thereafter hired the below-signed attorney.

28. On 09/01/2021, the plaintiff's below-signed attorney wrote to Lincoln requesting information and records not included in Lincoln's claim file.

29. On 09/13/2021, Lincoln wrote in a letter to the plaintiff's below-signed attorney that the plaintiff had exhausted her administrative remedies under ERISA and that the plaintiff's claim was closed, and Lincoln declined to provide further information.

30. Lincoln wrongfully terminated the plaintiff's disability benefits and denied her appeal even though the plaintiff's medical condition had not improved at the time of the termination or at the time of the denial of her appeal, even though Lincoln had no evidentiary basis for terminating those benefits, and even though Lincoln was presented with evidence that the plaintiff was disabled under the terms of the policy.

31. On 01/24/2022, after all the above events and despite continuing to receive medical treatment for her injuries, the plaintiff's condition improved such that she was able to resume full-time work with another employer that made accommodations as necessary to allow the plaintiff to return to full-time work.

32. From 02/01/2021 through 01/24/2022, the plaintiff was disabled under the terms of Lincoln's policy, but Lincoln did not pay disability benefits owed to the plaintiff during that time, which Lincoln owes to the plaintiff.

## **ERISA**

33. All allegations herein are incorporated in this part.

34. Pursuant to ERISA, 29 USC § 1132(a)(1)(B), the plaintiff, as a participant or beneficiary of the policy, may bring a civil action to recover benefits due to her under the terms of the policy, to enforce her rights under the terms of the policy, and to clarify her rights to future benefits under the terms of the policy.

**Damages & Relief**

35. All allegations herein are incorporated in this part.

36. The court should order Lincoln to pay the plaintiff unpaid LTD benefits under the definition of "own occupation" in Lincoln's policy from the date that Lincoln terminated those benefits on 02/01/2021 until the coverage for those benefits ended on 07/16/2021.

37. The court should order Lincoln to pay the plaintiff unpaid LTD benefits under the definition of "any occupation" in Lincoln's policy from the date that coverage for those benefits began on 07/16/2021 until the plaintiff returned to full-time work for another employer on 01/24/2022.

38. In sum, the court should order Lincoln to pay the plaintiff unpaid LTD benefits from 02/01/2021 to 01/24/2022.

39. The court should also order Lincoln to pay the plaintiff all reasonable attorney's fees for the prosecution and collection of the loss under ERISA, 29 U.S.C. § 1132(g).

40. The court should also order Lincoln to pay the plaintiff the costs of litigation.

41. The court should also order Lincoln to pay the plaintiff pre-judgment interest for all unpaid LTD benefits from the dates those payments were due to the date of the judgment.

42. The plaintiff prays for a recovery in excess of the amount required for federal court jurisdiction in diversity of citizenship cases.

**Prayer for Relief**

WHEREFORE, the plaintiff prays for judgment against Lincoln, in excess of the amount required for federal court jurisdiction in diversity of citizenship cases, for all damages suffered, past due disability benefits, reasonable attorney's fees, pre-judgment interest, post-judgment interest, costs, and all other relief to which she is entitled.

Respectfully submitted,

*/s/ Neil Chamberlin*

Neil Chamberlin, # 93222
MCMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201
Telephone 501-374-5411
Facsimile 501-374-5118
neil@mcmathlaw.com

# LIMITATIONS AND EXCLUSIONS UNDER THE ARKANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or health and accident insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association"). The purpose of the Guaranty Association is to assure that policy and contract owners will be protected, within certain limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of policy owners who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by the member insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting insurance companies that are well managed and financially stable.

DISCLAIMER

The Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association") may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions and require continued residency in this state. You should not rely on coverage by the Guaranty Association in purchasing an insurance policy or contract.

Coverage is NOT provided for your policy or contract or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract.

Insurance companies or their agents are required by law to provide you with this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

The Arkansas Life and Health Insurance Guaranty Association
c/o The Liquidation Division
1023 West Capitol
Little Rock, Arkansas 72201

Arkansas Insurance Department
1200 West Third Street
Little Rock, Arkansas 72201-1904

The state law that provides for this safety-net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act"). Below is a brief summary of the Act's coverages, exclusions and limits. This summary does not cover all provisions of the Act; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

## COVERAGE

Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or health insurance contract or policy, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of policy or contract owners are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons owning such policies are NOT protected by the Guaranty Association if:

- They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- The insurer was not authorized to do business in this state;



EXHIBIT 1

- Their policy or contract was issued by a nonprofit hospital or medical service organization, an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy or contract owner is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does NOT provide coverage for:

- Any policy or contract or portion thereof which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;
- Any policy of reinsurance (unless an assumption certificate was issued);
- Interest rate yields that exceed an average rate;
- Dividends and voting rights and experience rating credits;
- Credits given in connection with the administration of a policy by a group contract holder;
- Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- Unallocated annuity contracts (which give rights to group contractholders, not individuals);
- Unallocated annuity contracts issued to/in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC")(whether the FPBC is yet liable or not);
- Portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution);
- Portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by State or Federal law;
- Obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders or other documents which do not meet filing requirements, or claims for policy misrepresentations, or extra-contractual or penalty claims;
- Contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants (by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustees).

**LIMITS ON AMOUNT OF COVERAGE**

The Act also limits the amount the Guaranty Association is obligated to cover: The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $300,000 in health insurance benefits, $300,000 in present value of annuity benefits, or $300,000 in life insurance death benefits or net cash surrender values - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages. There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits, irrespective of the number of contracts held by the contract holder. These are limitations for which the Guaranty Association is obligated before taking into account either its subrogation and assignment rights or the extent to which those benefits could be provided out of the assets of the impaired or insolvent insurer.

# GROUP DISABILITY INCOME POLICY

**Sponsor:** Walmart Inc.

**Policy Number:** GD/GF3-850-290765-01

**Effective Date:** January 1, 2016

**Governing Jurisdiction** is **Arkansas** and subject to the laws of that State.

**Premiums** are due and payable Bi-weekly.

**Policy Anniversaries** shall occur each January 1st beginning in 2017.

Lincoln Life Assurance Company of Boston (hereinafter referred to as Lincoln) agrees to pay benefits provided by this policy in accordance with its provisions. This policy provides Short Term Disability and Long Term Disability coverages.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent. Under no circumstances will the Sponsor be deemed the agent of Lincoln.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Lincoln's Home Office, 100 Liberty Way, Suite 100, Dover, New Hampshire 03820-4695

SECRETARY                PRESIDENT

NON-PARTICIPATING

FORM ADOP

# TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

**Minimum Hourly Requirement:**

Full-time associates are benefit eligible based on Walmart defined classified job category and benefit eligibility.

**Short Term Disability Benefits:**

Class 1: All full-time active eligible New York hourly associates who enrolled in the 60.00% enhanced New York statutory plan

**Note:** Temporary, seasonal, and leased Employees, and Employees who are not United States citizens or legal residents working in the United States are not covered under this policy. Please note that "associates" in the Eligibility Requirement class descriptions will be referred to as "Employees" in the Policy and Certificate.

**Long Term Disability Benefits:**

Class A1: All full-time active eligible non-Puerto Rico hourly associates who enrolled in the 50.00% plan, excluding hourly Pharmacists who work in California

Class A2: All full-time active eligible non-Puerto Rico hourly associates who enrolled in the 60.00% plan, excluding hourly Pharmacists who work in California

Class B1: All full-time active eligible hourly Pharmacists who work in California and who enrolled when initially eligible or who enrolled in the 50.00% plan

Class B2: All full-time active eligible hourly Pharmacists who work in California and who enrolled when initially eligible or who enrolled in the 60.00% plan

Class C1: All full-time active eligible non-Puerto Rico salaried associates, management, salaried Pharmacists, and pilots who enrolled in the 50.00% plan

Class C2: All full-time active eligible non-Puerto Rico salaried associates, management, salaried Pharmacists, and pilots who enrolled in the 60.00% plan

Class D1: All full-time active eligible truck drivers who enroll in the 5 year benefit 50.00% plan

Class D2: All full-time active eligible truck drivers who enroll in the 5 year benefit 60.00% plan

Class D3: All full-time active eligible truck drivers who enroll in the full duration benefit 50.00% plan

Class D4: All full-time active eligible truck drivers who enroll in the full duration benefit 60.00% plan

**Note:** Temporary, seasonal, and leased Employees, and Employees who are not United States citizens or legal residents working in the United States are not covered under this policy. Please note that "associates" in the Eligibility Requirement class descriptions will be referred to as "Employees" in the Policy and Certificate.

**Eligibility Waiting Period:**

Applicable to Short Term Disability

1. If the Covered Person is employed by the Sponsor on the policy effective date -
   12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
   An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

2. If the Covered Person begins employment for the Sponsor after the policy effective date -
   12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
   An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

   Note: Prior service credit in an ineligible class will be honored towards fulfilling the Eligibility Waiting Period.

Applicable to Long Term Disability

Applicable to Class A1, A2

1. If the Covered Person is employed by the Sponsor on the policy effective date -
   12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
   An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

2. If the Covered Person begins employment for the Sponsor after the policy effective date -
   12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
   An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

   Note: Prior service credit in an ineligible class will be honored towards fulfilling the Eligibility Waiting Period.

Applicable to Class B1, B2, C1, C2, D1, D2, D3, D4

1. If the Covered Person is employed by the Sponsor on the policy effective date -
   None, if enrollment occurs during the Initial Enrollment Period
   An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

2. If the Covered Person begins employment for the Sponsor after the policy effective date -
   None, if enrollment occurs during the Initial Enrollment Period
   An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

**Employee Contributions Required:**

Short Term Disability Benefits:

Yes

Long Term Disability Benefits:

Yes

**Name of Associated Companies:**

Jet.com Inc.
221 River St, # 800
Hoboken, NJ 07030 USA

# SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

## SHORT TERM DISABILITY COVERAGE

**Elimination Period:**

The period for which a benefit is payable will commence following the Elimination Period shown below:

7 calendar days for Injury
7 calendar days for Sickness

**Note:** Benefits will begin on the first day following the completion of the Elimination Period.

**Amount of Insurance:**

60.00% of Basic Weekly Earnings not to exceed a Maximum Weekly Benefit of $6,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4. The Minimum Weekly Benefit is $20.00.

**Maximum Benefit Period:**

**Applicable to Injury:**

The period for which a benefit is payable, following completion of the Elimination Period, for any one Disability will end on the earliest of:

a. the end of the Disability; or

b. the end of the 25th week of Disability for which a benefit is payable.

**Applicable to Sickness:**

The period for which a benefit is payable, following completion of the Elimination Period, for any one Disability will end on the earliest of:

a. the end of the Disability; or

b. the end of the 25th week of Disability for which a benefit is payable.

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE**

**Elimination Period:**

Applicable to Class A1, A2, B1, B2:

The greater of:

a. the end of the Covered Person's Short Term Disability Benefits; or

b. 182 days

Applicable to Class C1, C2, D1, D2, D3, D4:

The greater of:

a. the end of the Covered Person's Short Term Disability Benefits; or

b. 180 days

**Amount of Insurance:**

Applicable to Class A1, B1, C1, D1, D3:

50.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class A2, B2, C2, D2, D4:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $18,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

**Maximum Basic Monthly Earnings on which the Benefit is Based:** $30,000.00

**Own Occupation Duration:**

24 Month Own Occupation

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $100.00 or 10.00% of the Covered Person's Gross Monthly Benefit, whichever is greater.

**Maximum Benefit Period:**

Applicable to Class A1, A2, B1, B2, C1, C2, D3, D4:

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than 62 | To normal retirement age |
| 62 | 48 months |
| 63 | 42 months |
| 64 | 36 months |
| 65 | 30 months |
| 66 | 27 months |
| 67 | 24 months |
| 68 | 21 months |
| 69 and over | 18 months |

* SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

Applicable to Class D1, D2:

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than 62 | To normal retirement age or 60 Months, whichever is less |
| 62 | 48 months |

| | |
|---|---|
| 63 | 42 months |
| 64 | 36 months |
| 65 | 30 months |
| 66 | 27 months |
| 67 | 24 months |
| 68 | 21 months |
| 69 and over | 18 months |

Applicable to Class A1:

Monthly Long Term Disability payments will be paid on a biweekly basis

## SECTION 2 - DEFINITIONS

In this section Lincoln defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Lincoln Life Assurance Company of Boston, 100 Liberty Way, Suite 100, Dover, New Hampshire 03820-4695.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Lincoln during which an Employee may enroll for coverage under this policy.

## SECTION 2 - DEFINITIONS
(Continued)

**"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

**"Application"** is the document designated in Section 9; it is attached to and is made a part of this policy.

**"Appropriate Available Treatment"** means care or services which are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;
2. accessible within the Covered Person's geographical region;
3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;
4. in accordance with generally accepted medical standards of practice.

Applicable to Class A1, A2, B1, B2, C1, C2:

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor for the prior 26 pay periods immediately prior to the last day worked, divided by 12. Such earnings will include bonuses, overtime pay, vacation pay, illness protection and personal pay. However, such earnings will not include commissions, other fringe benefits or any other extra compensation.

Applicable to Class D1, D2, D3, D4:

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor based on activity rate plus mileage, plus bonuses, for the past 26 pay periods immediately prior to the last day worked, divided by 12. However, such earnings will not include commissions, other fringe benefits or any other extra compensation

**"Basic Weekly Earnings"** means the Covered Person's weekly rate of earnings from the Sponsor for the prior 26 pay periods immediately prior to the last day worked, divided by 52. Such earnings will include bonuses, overtime pay, vacation pay, illness protection and personal pay. However, such earnings will not include commissions, other fringe benefits or any other extra compensation.

**"Consumer Price Index"** means the government publication "The Consumer Price Index for Urban Wage Earners and Clerical Workers" provided monthly by the U.S. Department of Labor, or its successor or in the event of no successor a similar Index of comparable purpose chosen by Lincoln.

**"Covered Person"** means an Employee insured under this policy.

**"Disability"** or **"Disabled"**, with respect to Short Term Disability, means the Covered Person, as a result of Injury or Sickness, is either unable to perform the essential duties of his job for his normal work schedule, or a license required for the Covered Person's job duties has been suspended due to a mental or physical illness or injury, or pregnancy. Benefits will be payable during a loss of license only while the Covered Person is disabled and pursuing reinstatement of his license on a timely basis. Timely pursuit of reinstatement means the Covered Person applies for reinstatement when his condition meets the criteria and he provides information and forms requested by the licensing agency on a timely basis until his license is reinstated. The determination of whether the Covered Person is disabled will be made on the basis of objective medical evidence. Objective medical evidence consists of facts and findings, including, but not limited to, X-rays, laboratory reports, tests, consulting physician reports as well as

reports and chart notes from the Covered Person's physician. Loss of license in and of itself is not sufficient for meeting the definition of Disability.

## SECTION 2 - DEFINITIONS
(Continued)

**"Disability"** or **"Disabled"**, with respect to Long Term Disability, means:

1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:

   i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

   ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

   **"Disability"** or **"Disabled"** means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of his Own Occupation under the applicable Federal Aviation Administration fitness standards.

3. With respect to Covered Persons employed as truck drivers:

   **"Disability"** or **"Disabled"** means :

   i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness:
      a. is unable to perform the Material and Substantial Duties of his Own Occupation, or
      b. loses medical certification in accordance with the Federal Motor Carrier Safety Regulations; and
   ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

**"Disability Benefits under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan due to Disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

## SECTION 2 - DEFINITIONS
(Continued)

**"Domestic Partner"** means an unmarried person of the same or opposite sex with whom the Covered Person shares a committed relationship, are jointly responsible for each other's welfare and financial obligations, at least 18 years of age and mentally competent to consent to a contract, not related by blood to a degree that could prohibit legal marriage in the state where they legally reside, maintain the same residence(s) and are not married to or legally separated from anyone else. A Domestic Partner certification must be completed and filed with the Sponsor before the partner can be designated as an Eligible Survivor.

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse or Domestic Partner, if living, otherwise the Covered Person's children under age 26.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Elimination Period"**, with respect to Short Term Disability, means a period of consecutive days of Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

Applicable to Class A1, A2, D1, D2, D3, D4:

**"Elimination Period"**, with respect to Long Term Disability, means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any sixty or fewer days during the Elimination Period and cannot continue, Lincoln will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

Applicable to Class B1, B2, C1, C2:

**"Elimination Period"**, with respect to Long Term Disability, means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any one hundred eighty or fewer days during the Elimination Period and cannot continue, Lincoln will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Person, if required, when enrolling for coverage. This form must be satisfactory to Lincoln.

**"Evidence of Insurability"** means a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined by Lincoln.

## SECTION 2 - DEFINITIONS
(Continued)

**"Extended Treatment Plan"** means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

**"Family Status Change"** means any one of the following events that may occur:
1. the Employee's marriage or divorce;
2. the Employee's filing or rescinding of a Domestic Partner certification;
3. the birth of a child to the Employee;
4. the adoption of a child by the Employee;
5. the death of the Employee's spouse or Domestic Partner or child;
6. the commencement or termination of employment of the Employee's spouse or Domestic Partner;
7. the change from part-time employment to full-time employment by the Employee or the Employee's spouse or Domestic Partner;
8. the change from full-time employment to part-time employment by the Employee or the Employee's spouse or Domestic Partner;
9. the taking of unpaid leave of absence by the Employee or the Employee's spouse or Domestic Partner.

**"Gross Monthly Benefit"** means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Gross Weekly Benefit"** means the Covered Person's Weekly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Hospital"** or **"Institution"** means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

## SECTION 2 - DEFINITIONS
(Continued)

**"Indexed Basic Monthly Earnings"** means the Covered Person's Basic Monthly Earnings in effect just prior to the date Disability or Partial Disability began adjusted on the first anniversary of benefit payments and each anniversary thereafter.

**"Initial Enrollment Period"** means one of the following periods during which an Employee may first enroll for coverage under this policy:

1. for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Lincoln.

Applicable to Short Term Disability Class 1 Class A1, A2

2. for an Employee who becomes eligible for insurance after the policy effective date, the period between 30 days and 90 days from his date of hire.

Applicable to Class B1, B2, C1, C2, D1, D2, D3, D4

2. for an Employee who becomes eligible for insurance after the policy effective date, the period within 60 days from his date of hire.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1. any Disability which begins more than 60 days after an Injury will be considered a Sickness; and
2. any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

**"Last Monthly Benefit"** means the gross Monthly Benefit payable to the Covered Person prior to his death without any reduction for earnings received from employment.

**"Material and Substantial Duties"**, with respect to Short Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Job and cannot be reasonably eliminated or modified.

**"Material and Substantial Duties"**, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

## SECTION 2 - DEFINITIONS
(Continued)

"**Mental Illness**" means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Lincoln will use the replacement chosen or published by the American Psychiatric Association.

"**Monthly Benefit**", with respect to Long Term Disability, means the monthly amount payable by Lincoln to the Disabled or Partially Disabled Covered Person.

"**Own Job**", with respect to Short Term Disability, means the Covered Person's job that he was performing when his Disability began.

"**Own Occupation**", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is performed at Wal-Mart Stores, Inc .

## SECTION 2 - DEFINITIONS
(Continued)

**"Partial Disability" or "Partially Disabled"**, with respect to Long Term Disability, means the Covered Person, as a result of Injury or Sickness, is able to:

1. perform one or more, but not all, of the Material and Substantial Duties of his Own Occupation or Any Occupation on an Active Employment or a part-time basis; or

2. perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and

3. earn between 20.00% and 80.00% of his Basic Monthly Earnings.

**"Physician"** means a person who:

1. is licensed to practice medicine and is practicing within the terms of his license; or

2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.

## SECTION 2 - DEFINITIONS
(Continued)

**"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;
2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and
3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Lincoln.

**"Regular Attendance"** means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.

**"Retirement Benefit under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2. does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and
3. is payable upon:
   a. early or normal retirement; or
   b. Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

## SECTION 2 - DEFINITIONS
(Continued)

**"Retirement Plan"** means a plan which provides retirement benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

**"Sponsor's Retirement Plan"** is deemed to include any Retirement Plan:

1. which is part of any Federal, State, Municipal or Association retirement system; or

2. for which the Employee is eligible as a result of employment with the Sponsor.

**"Substance Abuse"** means alcohol and/or drug abuse, addiction or dependency.

**"Treatment"** means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

**"Weekly Benefit"**, with respect to Short Term Disability, means the weekly amount payable by Lincoln to the Disabled Covered Person.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1. this policy's effective date; or
2. the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

**Initial Enrollment Period**

During the Initial Enrollment Period an Employee can enroll in any one coverage or coverage option shown in the Schedule of Benefits. If he does not choose any coverage or coverage option, he will not be enrolled for any coverage. If an Employee's Initial Enrollment Period takes place during or after the Annual Enrollment Period, but before the policy anniversary his coverage option will apply for (a) the rest of the policy year in which he first becomes eligible; and (b) the next policy year.

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2:

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1. a decrease in coverage;
2. an increase in coverage without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

Applicable to Long Term Disability Class D1, D2, D3, D4:

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1. a decrease in coverage;
2. an increase in coverage subject to Evidence of Insurability and the Pre-Existing Condition Exclusion defined herein.

Applicable to Short Term Disability Class 1:

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1. a decrease in coverage;
2. an increase in coverage without Evidence of Insurability.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

Applicable To Long Term Disability Class A1, A2, B1, B2, C1, C2:

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1. a decrease in coverage;

2. an increase in coverage without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

Applicable To Long Term Disability Class D1, D2, D3, D4:

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1. a decrease in coverage;

2. an increase in coverage subject to Evidence of Insurability and the Pre-Existing Condition Exclusion defined herein.

Applicable To Short Term Disability Class 1:

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1. a decrease in coverage;

2. an increase in coverage without Evidence of Insurability.

The Covered Person must apply for the change in coverage within 60 days of the date of the Family Status Change. Such changes in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Lincoln through the Sponsor in a form or format satisfactory to Lincoln.

1. For Coverage Applied for During Initial Enrollment Periods:

   a. an Employee will be insured on the date the Employee makes application for insurance if he enrolls on or before the 60th day after his Eligibility Date; or

Applicable to Short Term Disability Class 1:

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2:

b. an Employee who does not enroll on or before the 60th day after his Eligibility Date, or terminated his insurance while continuing to be eligible must submit an application to Lincoln for approval, at the Employee's expense. The Employee will be insured on the date Lincoln gives its approval.

Applicable to Long Term Disability Class D1, D2, D3, D4:

b. an Employee who does not enroll on or before the 60th day after his Eligibility Date, or terminated his insurance while continuing to be eligible must submit an application and Evidence of Insurability to Lincoln for approval, at the Employee's expense. The Employee will be insured on the date Lincoln gives its approval.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Effective Date of Insurance** (Continued)

Applicable to Short Term Disability Class 1:

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2:

2. For Contributory Coverage Applied for During Annual Enrollment Periods

   An Employee will be insured for the selected contributory coverage on the first day of the next policy anniversary.

3. For Coverage Applied for Due to a Family Status Change

   An Employee will be insured for the selected coverage on the later of the following dates, provided he applies or enrolls for the change in coverage before the end of the 60th day following the Family Status Change:

   a. the date of the Family Status Change;
   b. the date the Employee applies or enrolls for the change in coverage.

Applicable to Long Term Disability Class D1, D2, D3, D4:

2. For Contributory Coverage Applied for During Annual Enrollment Periods

   An Employee will be insured for the selected contributory coverage on the later of these dates:

   a. the first day of the next policy anniversary; or
   b. the date Lincoln gives its approval, if the Employee:

      i. increases his coverage option; or
      ii. terminated his insurance while continuing to be eligible.

      In the case of i. and ii. above, the Employee must submit an application and Evidence of Insurability to Lincoln for approval. This will be at the Employee's expense.

3. For Coverage Applied for Due to a Family Status Change

   An Employee will be insured for the selected coverage on the later of the following dates, provided he applies or enrolls for the change in coverage before the end of the 60th day following the Family Status Change:

   a. the date of the Family Status Change;
   b. the date the Employee applies or enrolls for the change in coverage; or
   c. the date Lincoln gives its approval, if the Employee:

      i. increases his coverage option; or
      ii terminated his insurance while continuing to be eligible.

      In the case of i. and ii. above, the Employee must submit an application and Evidence of Insurability to Lincoln for approval. This will be at the Employee's expense.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family and Medical Leave**

An Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1. the authorized leave is in writing;

2. the required premium is paid;

3. the Covered Person's benefit level, or the amount of earnings upon which the Covered Person's benefit may be based, will be that in effect on the date before said leave begins; and

4. continuation of coverage will cease immediately if any one of the following events should occur:

   a. the Covered Person returns to work;
   b. this group insurance policy terminates;
   c. the Covered Person is no longer in an eligible class;
   d. nonpayment of premium when due by the Sponsor or the Covered Person;
   e. the Covered Person's employment terminates.

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 13 weeks of his termination date, all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date. If a former Employee is re-hired by the Sponsor more than 13 weeks after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is given a leave of absence. Coverage will be reinstated if you return to Active Employment status within one year.

The Covered Person's coverage will not continue beyond a period of 90 days. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

**Lay-off**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is temporarily laid off. Coverage will be reinstated if you return to Active Employment status within one year.

The Covered Person's coverage will not continue beyond a period of 90 days. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

**Associated Companies**

Companies, corporations, firms or individuals that are subsidiary to, or affiliated with, the Sponsor will be called Associated Companies. The Associated Companies, if any, are listed in the Schedule of Benefits. Employees of Associated Companies will be considered Employees of the Sponsor for purposes of this policy.

As they relate to this policy, all actions, agreements and notices between Lincoln and the Sponsor will be binding on the Associated Companies.

If any Associated Companies cease to be Associated Companies for any reason, its Employees will be deemed to have transferred to a class of Employees not eligible for coverage under this policy.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1. at the time of transfer are covered under the prior carrier's policy; and
2. are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1. the amount of the Disability benefit that would have been payable under the prior policy and subject to any applicable policy limitations; or
2. the amount of Disability benefits payable under this policy. If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2, D1, D2, D3, D4:

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1. Lincoln will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;
2. if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

# SECTION 4 - DISABILITY INCOME BENEFITS

## SHORT TERM DISABILITY COVERAGE

### Disability Benefit

When Lincoln receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Lincoln will pay the Covered Person a Weekly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Lincoln Proof of continued:

1. Disability;
2. Regular Attendance of a Physician; and
3. Appropriate Available Treatment.

The Proof must be given upon Lincoln's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Lincoln will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Weekly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; or
2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

### Amount of Disability Weekly Benefit

To figure the amount of Weekly Benefit:

1. Take the lesser of:
   a. the Covered Person's Basic Weekly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or
   b. the Maximum Weekly Benefit shown in the Schedule of Benefits; and then
2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1. The amount for which the Covered Person is eligible under:

    a. any work loss provision in mandatory "No-Fault" auto insurance; or

    b. any governmental program or coverage required or provided by statute (including any amount attributable to the Covered Person's family).

2. any amount the Covered Person receives from any unemployment benefits.

**Other Income Earnings** means:

1. the amount of earnings the Covered Person earns or receives from any form of employment ; and

2. any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

Other Income Benefits, except retirement benefits, must be payable as a result of the same Disability for which Lincoln pays a benefit. The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Estimation of Benefits**

Lincoln will reduce the Covered Person's Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1. provides satisfactory proof of application for Other Income Benefits;
2. signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Lincoln for any overpayment resulting from the award or receipt of Other Income Benefits;
3. if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Lincoln determines that further appeals are not likely to succeed; and
4. if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Lincoln determines that further appeals are not likely to succeed.

In the event that Lincoln overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Lincoln will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

### SHORT TERM DISABILITY COVERAGE (Continued)

**Lump Sum Payments**

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and meant to compensate the Covered Person for any one or more of the following:

1. loss of past or future wages;
2. impaired earnings capacity;
3. lessened ability to compete in the open labor market;
4. any degree of permanent impairment; and
5. any degree of loss of bodily function or capacity;

will be prorated on a weekly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, over a period of 260 weeks.

**Cost of Living Freeze**

After the first deduction for each of the Other Income Benefits, the Weekly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits provision of this policy.

**Prorated Benefits**

For any period for which a Short Term Disability benefit is payable that does not extend through a full week, the benefit will be paid on a prorated basis. The rate will be 1/7th for each day for such period of Disability.

**Discontinuation of the Short Term Disability Benefit**

The Weekly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability and Regular Attendance of a Physician;

2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Discontinuation of the Short Term Disability Benefit** (Continued)

The Weekly Benefit will cease on the earliest of: (Continued)

3. the date the Covered Person refuses to be examined or evaluated at reasonable intervals;
4. the date the Covered Person refuses to receive Appropriate Available Treatment;
5. the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;
6. the date the Covered Person is no longer Disabled according to this policy;
7. the end of the Maximum Benefit Period; or
8. the date the Covered Person dies.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Successive Periods of Disability**

With respect to this policy, "**Successive Periods of Disability**" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Weekly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1. returns to his Own Job on an Active Employment basis for less than thirty continuous days; and

2. performs all the Material and Substantial duties of his Own Job.

To qualify for the Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Weekly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Job on an Active Employment basis for thirty continuous days or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group short term disability coverage, this Successive Periods of Disability provision will cease to apply to that Covered Person.

# SECTION 4 - DISABILITY INCOME BENEFITS

## LONG TERM DISABILITY COVERAGE

**Disability Benefit**

When Lincoln receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Lincoln will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Lincoln Proof of continued:

1. Disability;
2. Regular Attendance of a Physician; and
3. Appropriate Available Treatment.

The Proof must be given upon Lincoln's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, for persons other than pilots and co-pilots, Lincoln will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Monthly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; or
2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Disability Monthly Benefit**

To figure the amount of Monthly Benefit:

1. Take the lesser of:
   a. the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or
   b. the Maximum Monthly Benefit shown in the Schedule of Benefits; and then
2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Lincoln, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability**

When Lincoln receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness and requires the Regular Attendance of a Physician, he may be eligible to receive a Monthly Benefit, subject to any other provisions of this policy. To be eligible to receive Partial Disability benefits, the Covered Person may be employed in his Own Occupation or another occupation, must satisfy the Elimination Period and must be earning between 20.00% and 80.00% of his Basic Monthly Earnings.

A Monthly Benefit will be paid for the period of Partial Disability if the Covered Person gives to Lincoln Proof of continued:

1. Partial Disability;
2. Regular Attendance of a Physician; and
3. Appropriate Available Treatment.

The Proof must be given upon Lincoln's request and at the Covered Person's expense. In determining whether the Covered Person is Partially Disabled, for persons other than pilots and co-pilots, Lincoln will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, pay cuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Partial Disability, the Injury must occur and Partial Disability must begin while the Employee is insured for this coverage.

**Proportionate Loss Monthly Calculation with Work Incentive Benefit**

For the first 3 Months, the work incentive benefit will be an amount equal to the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits, without any reductions from earnings. The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of the Covered Person's Basic Monthly Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his Basic Monthly Earnings.

Thereafter, to figure the Amount of Monthly Benefit the formula (A divided by B) x C will be used.

A = The Covered Person's Basic Monthly Earnings minus the Covered Person's earnings received while he is Partially Disabled. This figure represents the amount of lost earnings.

B = The Covered Person's Basic Monthly Earnings.

C = The Monthly Benefit as figured in the Disability provision of this policy plus the Covered Person's earnings received while he is Partially Disabled, (but, not including adjustments under the Cost of Living Adjustment Benefit, if included).

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability** (Continued)

**Proportionate Loss Monthly Calculation with Work Incentive Benefit** (Continued)

On the first anniversary of benefit payments and each anniversary thereafter, for the purpose of calculating the benefit, the term "Basic Monthly Earnings" is:

1. replaced by "Indexed Basic Monthly Earnings"; and
2. increased annually by 7.00%, or the current annual percentage increase in the Consumer Price Index, whichever is less.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Lincoln, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Mental Illness and/or Substance Abuse Limitation**

The benefit for Disability due to Mental Illness and/or Substance Abuse will not exceed a period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Survivor Benefit**

Lincoln will pay a lump sum benefit to the Eligible Survivor when Proof is received that a Covered Person died:

1. after Disability had continued for 180 or more consecutive days; and

2. while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to the greater of $5,000.00 or three times the Covered Person's Last Monthly Benefit.

If the survivor benefit is payable to the Covered Person's children, payment will be made in equal shares to the children, including step children and legally adopted children. However, if any of said children are minors or incapacitated, payment will be made on their behalf to the court appointed guardian of the children's property. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If there is no Eligible Survivor, the benefit is payable to the estate.

If an overpayment is due to Lincoln at the time of a Covered Person's death, the benefit payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1. The amount for which the Covered Person is eligible under:

   a. Workers' or Workmen's Compensation Laws;
   b. Occupational Disease Law;
   c. Title 46, United States Code Section 688 (The Jones Act);
   d. any work loss provision in mandatory "No-Fault" auto insurance;
   e. Railroad Retirement Act;
   f. any governmental compulsory benefit act or law; or
   g. any other act or law of like intent.

2. The amount of any Disability benefits which the Covered Person is eligible to receive under:
   a. any other group insurance plan of the Sponsor;
   b. any governmental retirement system as a result of his employment with the Sponsor ; or
   c. any individual insurance plan where the premium is wholly or partially paid by the Sponsor. However, Lincoln will only reduce the Monthly Benefit if the Covered Person's Monthly Benefit under this policy, plus any benefits that the Covered Person is eligible to receive under such individual insurance plan exceed 100% of the Covered Person's Basic Monthly Earnings. If this sum exceeds 100% of Basic Monthly Earnings, the Covered Person's Monthly Benefit under this policy will be reduced by such excess amount.

3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:

   a. the amount of any Disability Benefits under a Retirement Plan, or Retirement Benefits under a Retirement Plan the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and
   b. the amount the Covered Person receives as retirement payments when he reaches the later of age 62, or normal retirement age as defined in the Sponsor's plan.

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

   a. the Covered Person receives or is eligible to receive; and
   b. his spouse, child or children receives or are eligible to receive because of his Disability; or
   c. his spouse, child or children receives or are eligible to receive because of his eligibility for retirement benefits.

5. Any amount the Covered Person receives from any unemployment benefits.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings** (Continued)

**Other Income Earnings** means:

1. the amount of earnings the Covered Person earns or receives from any form of employment ; and

2. any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

Other Income Benefits, except retirement benefits, must be payable as a result of the same Disability for which Lincoln pays a benefit. The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

LONG TERM DISABILITY COVERAGE (Continued)

**Estimation of Benefits**

Lincoln will reduce the Covered Person's Disability or Partial Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person and his dependents.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1. provides satisfactory proof of application for Other Income Benefits;

2. signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Lincoln for any overpayment resulting from the award or receipt of Other Income Benefits;

3. if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Lincoln determines that further appeals are not likely to succeed; and

4. if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Lincoln determines that further appeals are not likely to succeed.

Lincoln will not estimate or reduce for any benefits under the Sponsor's pension or retirement benefit plan according to applicable law, until the Covered Person actually receives them.

In the event that Lincoln overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Lincoln will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

**Social Security Assistance**

Lincoln may help a Covered Person in applying for Social Security Disability Income Benefits. In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Lincoln. Such assistance will be provided only if Lincoln determines that assistance would be beneficial.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Lump Sum Payments**

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and are meant to compensate the Covered Person for any one or more of the following:

1. loss of past or future wages;
2. impaired earnings capacity;
3. lessened ability to compete in the open labor market;
4. any degree of permanent impairment; and
5. any degree of loss of bodily function or capacity;

will be prorated on a monthly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, the lesser of:

   a. the remainder of the Maximum Benefit Period; or
   b. 5 years.

**Cost of Living Freeze**

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this policy. This provision does not apply to increases received from any form of employment.

**Prorated Benefits**

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th for each day for such period of Disability.

**Discontinuation of the Long Term Disability Benefit**

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;

2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Discontinuation of the Long Term Disability Benefit** (Continued)

The Monthly Benefit will cease on the earliest of: (Continued)

3. the date the Covered Person refuses to be examined or evaluated at reasonable intervals;

4. the date the Covered Person refuses to receive Appropriate Available Treatment;

5. the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;

6. the date the Covered Person is able to work in his Own Occupation on a part-time basis, but chooses not to;

7. the date the Covered Person's current Partial Disability earnings exceed 80.00% of his Indexed Basic Monthly Earnings;

   Because the Covered Person's current earnings may fluctuate, Lincoln will average earnings over three consecutive months rather than immediately terminating his benefit once 80.00% of Indexed Basic Monthly Earnings has been exceeded.

8. the date the Covered Person is no longer Disabled according to this policy;

9. the end of the Maximum Benefit Period; or

10. the date the Covered Person dies.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

LONG TERM DISABILITY COVERAGE (Continued)

**Successive Periods of Disability**

With respect to this policy, "**Successive Periods of Disability**" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1. returns to his Own Occupation on an Active Employment basis for less than six continuous months; and

2. performs all the Material and Substantial Duties of his Own Occupation.

To qualify for a Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group long term disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.

# SECTION 5 - EXCLUSIONS

## GENERAL EXCLUSIONS

This policy will not cover any Disability due to:

1. war, declared or undeclared, or any act of war;
2. active Participation in a Riot;
3. the committing of or attempting to commit a felony or misdemeanor; or
4. cosmetic surgery unless such surgery is in connection with an Injury or Sickness sustained while the individual is a Covered Person.

No benefit will be payable during any period of incarceration.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

## SECTION 5 - EXCLUSIONS

### SHORT TERM DISABILITY COVERAGE

**Disability Benefit Exclusions**

A Weekly Benefit will not be payable if a Covered Person becomes Disabled due to:

1. Injury that arises out of or in the course of employment; or
2. Sickness when a benefit is payable under a Workers' Compensation Law, or any other act or law of like intent.

These exceptions will not apply to partners or proprietors who elect not to be covered under such laws.

## SECTION 5 - EXCLUSIONS
(Continued)

### LONG TERM DISABILITY COVERAGE

**Pre-Existing Condition Exclusion**

This policy will not cover any Disability or Partial Disability:

1. which is caused or contributed to by, or results from, a Pre-Existing Condition; and

2. which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

**"Pre-Existing Condition"** means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

# SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1. the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2. the date the Covered Person is no longer in an eligible class;

3. the date the Covered Person's class is no longer included for insurance;

4. the last day for which any required Employee contribution has been made;

5. the date employment terminates. Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

   a. the Elimination Period; and
   b. any period during which premium is being waived.

6. the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Lincoln reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

## SECTION 6 - TERMINATION PROVISIONS
(Continued)

**Policy Termination**

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Lincoln at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Lincoln for all premiums due and unpaid for the full period for which this policy is in force.

3. Lincoln may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

   a. the number of Employees insured is fewer than 10; or

   b. less than 25.00% of all the Employees eligible for any contributory insurance are insured for it; or

   c. the Sponsor fails:

      i. to furnish promptly any information which Lincoln may reasonably require; or
      ii. to perform any other obligations pertaining to this policy.

4. Lincoln may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Lincoln will provide written notice of such termination to the Sponsor at least 31 days before the termination is effective.

5. Termination may take effect on an earlier date if agreed to by the Sponsor and Lincoln.

# SECTION 7 - GENERAL PROVISIONS

**Assignment**

No assignment of any present or future right or benefit under this policy will be allowed.

**Complete Contract - Policy Changes**

1. This policy is the entire contract. It consists of:

    a. all of the pages; and
    b. the attached signed Application of the Sponsor; and
    c. if contributory each Employee's signed application for insurance.

2. This policy may be changed in whole or in part. Only an officer of Lincoln can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3. No other person, including an agent, may change this policy or waive any part of it.

**Conformity with State Statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

**Employee's Certificate**

Lincoln will provide a Certificate to the Sponsor for delivery to Covered Persons. It will state:

1. the name of the insurance company and the policy number;
2. a description of the insurance provided;
3. the method used to determine the amount of benefits;
4. to whom benefits are payable;
5. limitations or reductions that may apply;
6. the circumstances under which insurance terminates; and
7. the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

**Examination**

Lincoln, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Lincoln. This right may be used as often as reasonably required.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Furnishing of Information - Access to Records**

1. The Sponsor will furnish at regular intervals to Lincoln:

   a. information relative to Employees:

      i. who qualify to become insured;
      ii. whose amounts of insurance change; and/or
      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably required.

   The Sponsor's records which, in the opinion of Lincoln, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not:

   a. deprive an Employee of insurance;
   b. affect an Employee's Amount of Insurance; or
   c. effect or continue an Employee's insurance which otherwise would not be in force.

**Interpretation of the Policy**

Lincoln shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Lincoln's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue. The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after Proof of claim has been given; or

2. more than three years after the time Proof of claim is required.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Misstatement of Age**

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon an Employee's age, the amount of the benefit will be the amount an Employee would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Lincoln is advised of the error.

**Notice and Proof of Claim**

1. **Notice**

   a. Notice of claim must be given to Lincoln within 30 days of the date of the loss on which the claim is based. If that is not possible, Lincoln must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Lincoln.

   b. When written notice of claim is applicable and has been received by Lincoln, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Lincoln written Proof of claim without waiting for the forms.

2. **Proof**

   a. Satisfactory Proof of loss must be given to Lincoln no later than 30 days after the end of the Elimination Period.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

   c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Lincoln within 30 days of the request for such Proof.

Lincoln reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

**Payment of Claims**

The benefit is payable to the Covered Person. But, if a benefit is payable to a Covered Person's estate, a Covered Person who is a minor, or who is not competent, Lincoln has the right to pay up to $2,000 to any of the Covered Person's relatives or any other person whom Lincoln considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Covered Person. If Lincoln in good faith pays the benefit in such a manner, any such payment shall fulfill Lincoln's responsibility for the amount paid.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Right of Recovery**

Lincoln has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Lincoln in processing a claim; or
3. the Covered Person's receipt of any Other Income Benefits.

Lincoln may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;
2. reducing any benefits payable under this policy;
3. taking any appropriate collection activity available including any legal action needed; and
4. placing a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Lincoln.

**Statements**

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees). No representation by:

1. the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2. any Employee in enrolling for insurance under this policy will be used to reduce or deny a claim unless a copy of the Enrollment Form, signed by the Employee if required, is or has been given to the Employee.

**Subrogation and Reimbursement**

When a Covered Person's Injury or Sickness appears to be someone else's fault, benefits otherwise payable under this policy for loss of time as a result of that Injury or Sickness will not be paid unless the Covered Person or his legal representative agree(s):

1. to repay Lincoln for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

2. to allow Lincoln a lien on such compensation and to hold such compensation in trust for Lincoln; and

3. to execute and give to Lincoln any instruments needed to secure the rights under 1. and 2. above.

Further, when Lincoln has paid benefits to or on behalf of the injured Covered Person, Lincoln will be subrogated to all rights of recovery that the Covered Person has against the person at fault. These subrogation rights will extend only to recovery of the amount Lincoln has paid. The Covered Person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Lincoln.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Workers' Compensation**

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

## SECTION 8 - PREMIUMS

**Premium Rates**

Lincoln has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

**Applicable to Long Term Disability**

A change in the initial premium rate(s) will not take effect within the first 36 months except that Lincoln may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

**Applicable to Short Term Disability**

A change in the initial premium rate(s) will not take effect within the first 24 months except that Lincoln may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1. a change occurs in the policy design;
2. a division, subsidiary or Associated Company is added to or deleted from this policy;
3. when the number of Covered Persons changes by 10.00% or more from the number insured on this policy's effective date; or
4. a change in existing law which affects this policy.

No premium may be changed unless Lincoln notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Lincoln and the Sponsor agree.

**Payment of Premiums**

1. All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Lincoln's Administrative Office, or to Lincoln's agent. The due dates are specified on the first page of this policy.
2. All payments made to or by Lincoln shall be in United States dollars.
3. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.
4. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.

5. If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

6. Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

    1. the current policy year; and

    2. the immediately preceding policy year.

## SECTION 8 - PREMIUMS
(Continued)

**Grace Period**

This is the 45 days following a premium due date, other than the first, during which premium payment may be made. During the grace period this policy shall continue in force, unless the Sponsor has given Lincoln written notice 31 days in advance of discontinuance of this policy.

**Waiver of Premium**

With respect to Long Term Disability benefits, premium payments for a Covered Person are waived during any period for which benefits are payable. If coverage is to be continued, premium payments must be resumed following a period during which they were waived.

# AMENDMENT NO. 1

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Revised the Elimination Period in Section 1 | Form ADOP-SCH-3 R (1) | Form ADOP-SCH-3 |

The effective date of this change is March 1, 2016.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 23rd day of June, 2016.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ____________________________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**



# AMENDMENT NO. 2

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Removed severance under Other Income Earnings in Section 4 | Form ADOP-LTD-23 R (1) | Form ADOP-LTD-23 |

The effective date of this change is January 1, 2016.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 1st day of November, 2016.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ______________________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**

[signature]

# AMENDMENT NO. 3

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Revised the Long Term Disability Own Occupation Duration in Sections 1 and 2. | Form ADOP-SCH-3 R (2)<br>Form ADOP-DEF-3.1 R (1) | Form ADOP-SCH-3 R (1)<br>Form ADOP-DEF-3.1 |
| Added a work incentive provision to the Long Term Disability Partial Disability benefit in Section 4. | Form ADOP-LTD-5.8 R (1) | Form ADOP-LTD-5.8 |

The effective date of this change is January 1, 2017.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 15th day of March, 2017.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ______________________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**

# AMENDMENT NO. 4

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Revision to the Long Term Disability Minimum Benefit, revision to the Survivor Benefit, and a revision to the Long Term Disability Pre-Existing Condition Exclusion | Form ADOP-SCH-4 R (1)<br>Form ADOP-LTD-10 R (1)<br>Form ADOP-EXC-5 R (1) | Form ADOP-SCH-4<br>Form ADOP-LTD-10<br>Form ADOP-EXC-5 |

The effective date of this change is January 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 22nd day of September, 2017.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ______________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**



# AMENDMENT NO. 5

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Revision to the Survivor Benefit waiting period applicable to classes B1, B2, C1, C2, D1, D2, D3, D4, added an Associated Company, Removed the Gender Change Exclusion, and revised the Short Term Disability definition of Disability. Exception processing draft | Form ADOP-SCH-1 R (1)<br>Form ADOP-DEF-2<br>Form ADOP-LTD-10 R (2)<br>Form ADOP-EXC-1 | Form ADOP-SCH-1<br>Form ADOP-DEF-2<br>Form ADOP-LTD-10 R (1)<br>Form ADOP-EXC-1 |

The effective date of this change is January 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 5th day of December, 2017.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ____________________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**

# AMENDMENT NO. 6

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Removed the Short Term Disability severance offset | Form ADOP-STD-7 R (1) | Form ADOP-STD-7 |

The effective date of this change is January 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 3rd day of April, 2018.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ______________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**

# AMENDMENT NO. 7

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Revised the Sponsor's legal name | Face Page R (1)<br>Form ADOP-SCH-1 R (2) | Face Page<br>Form ADOP-SCH-1 R (1) |

The effective date of this change is February 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 3rd day of April, 2018.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ______________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**

# AMENDMENT NO. 8

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Increased the Maximum Monthly Benefit and Maximum Basic Monthly Earnings for classes A2, B2, C2, D2, and D4 | Form ADOP-SCH-3 R (3) | Form ADOP-SCH-3 R (2) |

The effective date of this change is January 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 24th day of August, 2018.

Issued to and Accepted by:

Walmart Inc.
**Sponsor**

By ______________________________
**Signature and Title of Officer**

**Lincoln Life Assurance Company of Boston**

## AMENDATORY RIDER 1

This rider forms a part of the Policy GD/GF3-850-290765-01

The effective date of this Rider is March 1, 2013

| **In compliance with Arkansas Department of Insurance Rule 101, the provision displayed on Form ADOP-GNP-2 Interpretation of the Policy has been replaced in its entirety with the following text:** |
|---|
| Interpretation of the Policy |
| Liberty shall possess the authority, in its discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding. This discretionary authority should not be construed to limit the legal action that may be taken by a Covered Person in accordance with the Legal Action provision of the policy and any applicable state or federal law. |

In all other respects, the Policy remains the same.

Signed at Lincoln's Home Office, 100 Liberty Way, Suite 100, Dover, New Hampshire 03820-4695

SECRETARY

PRESIDENT